IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 2, 2003

**STATE OF TENNESSEE v. CHARLES WADE**

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5201     Jon Kerry Blackwood, Judge**

---

**No. W2003-00860-CCA-R3-CD  - Filed March 30, 2004**

---

A Fayette County jury convicted the defendant of promoting prostitution. The trial court sentenced the defendant to five years' incarceration as a Range III persistent offender. On appeal, the defendant attacks the sufficiency of the evidence and his sentence. We discern no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Gary F. Antrican, District Public Defender; and Shana McCoy-Johnson, Senior Assistant District Public Defender, for the appellant, Charles Wade.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Terry D. Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant was convicted of promoting prostitution by encouraging Mindy Watson to engage in sexual intercourse with numerous individuals in exchange for money, which he then used to purchase drugs on February 2 and 3, 2002. *See* Tenn. Code Ann. § 39-13-515 (2003).

George Duncan testified that on a night in February or March 2002 between 10:30 p.m. and 11:00 p.m., the defendant brought a woman to Duncan's residence located at Bond Project in Fayette County, Tennessee. The defendant asked Duncan if he "wanted sex for $30," and Duncan agreed to the proposition. Duncan stated the defendant negotiated the price, and the woman did not speak. The defendant then left the residence, returned later, and waited for the woman at the side of the road. Duncan stated he "wound up" paying the woman $20, and she then left with the defendant. Duncan stated the woman did not leave his residence until the defendant returned. Duncan further stated he was not charged with a criminal offense as a result of the incident.

Percy Boswell testified the defendant and Mindy Watson came to his residence, and Watson entered his residence while the defendant remained outside. Watson then offered to engage in sexual intercourse for either drugs or money, and Boswell informed Watson that he had neither drugs nor money. Boswell stated he then stood at his doorway and informed the defendant that he did not have any money. The defendant then requested permission to enter the residence, which Boswell refused to grant.

Mindy Watson testified that on February 2 and 3, 2002, the defendant drove her to Duncan's residence, Boswell's residence, and two other residences, all of which were located in Fayette County, Tennessee. She stated the defendant knew each of the occupants, although she was acquainted only with Boswell. According to her testimony, the defendant instructed her to engage in sexual intercourse with the men in exchange for money. She stated that upon leaving a residence, she and the defendant would purchase crack cocaine with the money, they would consume the drugs, and the defendant would then drive her to another residence.

She stated that she did not select the residences to which the defendant took her and that the defendant encouraged her to engage in the acts. She further stated the defendant entered each residence and negotiated with the men. She testified she did not control the money involved in the transactions. She stated that although Duncan paid her the money, she subsequently presented the money to the defendant. She testified that she remained at each residence until the defendant returned for her. As to the Boswell matter, she testified that prior to entering the residence, she observed the defendant and Boswell having a conversation while standing outside of the residence.

She testified the defendant later called her mother-in-law who then contacted the police, and the police subsequently took her into custody. As a result of the events, she pleaded guilty to prostitution and received six months' probation.

Carolyn Watson, Mindy Watson's mother-in-law, testified she received a telephone call from a man requesting that she retrieve Mindy because "they [were] tired of her." She, along with police officers, went to the designated location, and Mindy Watson and the defendant exited a vehicle. The defendant was taken into custody. Mindy Watson was under the influence of drugs and "messed up."

Patricia Aldridge testified that she was at Duncan's residence when the defendant and Mindy Watson arrived. Aldridge stated that the defendant first entered the residence and spoke to Duncan in Duncan's bedroom. When the defendant reentered the living room, Watson then entered the residence. Aldridge stated that as she was exiting the residence to go to the store, she observed the defendant leaving in Watson's vehicle. Aldridge further stated that she and the defendant returned to the residence at the same time, and she observed Watson exit the bedroom.

The defendant did not testify at trial.

The defendant first contends the evidence is insufficient to support his conviction. Specifically, the defendant contends the evidence fails to establish that he encouraged, induced, or purposely caused Mindy Watson to become a prostitute. We disagree.

-2-

When reviewing the trial court's judgment, this court will not disturb a verdict of guilt unless the facts of the record and inferences which may be drawn therefrom are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). In other words, this court will not reevaluate or reweigh the evidence. We presume that the jury has resolved all conflicts in the testimony and has drawn all reasonable inferences from the evidence in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof when he challenges the sufficiency of the evidence at the appellate level. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

"Promoting prostitution," as applicable to the case at bar, is defined as "[e]ncouraging, inducing, or otherwise purposely causing another to become a prostitute[.]" Tenn. Code Ann. § 39-13-512(4)(C) (2003). "Prostitution" includes "engaging in, or offering to engage in, sexual activity as a business[.]" *Id.* § 39-13-512(5) (2003).

Mindy Watson testified the defendant drove her to various residences where she engaged in sexual intercourse with men in exchange for money, and she and the defendant then used the money to purchase crack cocaine which they both consumed. She stated the defendant knew all of the occupants of the residences. According to her testimony, the defendant encouraged her to engage in the acts, the defendant negotiated the proposals to the men, and she did not handle the money involved in the transactions.

Duncan testified the defendant presented him with the proposal while Watson remained silent. Duncan testified he paid Watson the money; however, Watson stated she subsequently gave the money to the defendant. Furthermore, both Watson and Duncan testified the defendant left her at the residence and later returned to retrieve her. Watson stated the defendant later called her mother-in-law.

We conclude the evidence, when viewed in a light most favorable to the state, establishes that the defendant promoted prostitution by encouraging Mindy Watson to engage in sexual intercourse with men in exchange for money. Accordingly, the defendant is not entitled to relief on this issue.

The defendant generally argues that his sentence is excessive "[g]iven the facts of this case, the sentence of the principal actor 'Mrs. Watson,' and the testimony as a whole." We disagree.

The only proof submitted at the sentencing hearing was the defendant's pre-sentence report. The defendant's written statement, which he submitted in preparation of the pre-sentence report and in which he denied guilt, was attached to the report. Furthermore, according to the report, the defendant had six prior felony convictions for cocaine-related offenses, two prior felony convictions for petit larceny, and several misdemeanor convictions.

The trial court applied enhancement factor (2), "previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(2) (2003). The trial court then sentenced the defendant to five years' incarceration as a persistent offender.

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401 (2003), Sentencing Comm'n Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d) (2003).

The defendant does not contest his persistent offender classification. *See id.* § 40-35-107(a) (2003). We conclude the trial court properly applied enhancement factor (2) to the defendant's sentence. *See id.* § 40-35-114(2) (2003). Based upon the information presented in the pre-sentence report, the defendant's criminal record is extensive and greatly exceeds the number of convictions necessary to classify him as a persistent offender. *See id.* § 40-35-107(a) (2003). The applicable range of sentencing for a defendant convicted of a Class E felony as a Range III persistent offender is four to six years. *See id.* § 40-35-112(c)(5) (2003). We conclude the trial court did not abuse its discretion in imposing a sentence one year above the minimum in light of the application of enhancement factor (2). *See id.* § 40-35-114(2) (2003).

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE